## Schiglizzo, Appellant, v. Dunn.

*Negligence—Master and servant—Safe place to work—Contributory negligence—Province of court and jury.*

The duty to provide a safe place to work and to maintain it in a reasonably safe condition by inspection and repair is a direct, personal and absolute obligation from which nothing but performance can relieve an employer, and the person to whom it is delegated becomes a vice principal whose neglect is the neglect of the employer.

In an action by an employee against his employer to recover damages for personal injuries, the case is for the jury where the evidence shows that the plaintiff was at work on a dangerous pile of stones, that he had protested to defendant's superintendent of the dangerous condition of the place where he was working and refused to work, that the superintendent had reprimanded him for his refusal to work, and had ordered him to go on, promising him to remove the danger.

Argued Feb. 6, 1905. Appeal, No. 234, Jan. T., 1904, by plaintiff, from order of C. P. Del. Co., March T., 1903, No. 4, refusing to take off nonsuit in case of Nichola Schiglizzo v. William A. Dunn and William R. Richards, trading as William A. Dunn & Company. Before MITCHELL, C. J., DEAN, BROWN, MESTREZAT and POTTER, JJ. Reversed.

Trespass to recover damages for personal injuries. Before HEMPHILL, P. J., specially presiding.

The facts appear by the opinion of the Supreme Court.

*Error assigned* was in refusing to take off nonsuit.

*O. B. Dickinson,* with him *J. H. Hinkson,* for appellant.— The case was for the jury: Settle v. R. R. Co., 127 Mo. 336 (30 S. W. Repr. 125); Lucey v. Oil Co., 129 Mo. 32 (31 S. W. Repr. 340); Shearman and Redfield on Negligence, 112, sec. 96; Clarke v. Holmes, 7 Hurlst. & N. 937; Holmes v. Worthington, 2 Fost. & F. 533; Reese v. Clark, 198 Pa. 312; Williams v. Clark, 204 Pa. 416; Webster v. Coal & Coke Co., 201 Pa. 278; Brownfield v. Hughes, 128 Pa. 194; Patterson v. R. R. Co., 76 Pa. 389; Garrity v. Penna. Casting & Machine Co., 17 Pa. Superior Ct. 623; Lillie v. American Car & Foundry Co., 209 Pa. 161.

*W. Roger Fronefield,* with him *Andrew C. Wylie,* for appellees.—The defendant was not negligent: O'Neal v. Clydes-

dale Stone Co., 207 Pa. 378; Durst v. Carnegie Steel Co., 173 Pa. 162; Garrity v. Casting & Machine Co., 17 Pa. Superior Ct. 623; Lillie v. Car & Foundry Co., 209 Pa. 161.

The appellant assumed the risk of injury in going on the pile of stone : Bemisch v. Roberts, 143 Pa. 1; Lineoski v. Coal Co., 157 Pa. 153; Pittsburg, etc., R. R. Co. v. Sentmeyer, 92 Pa. 276; Fricker v. Bridge Co., 197 Pa. 442; Nuss v. Rafsnyder, 178 Pa. 397; Fletcher v. Traction Co., 190 Pa. 117; Moore v. Penna. R. R. Co., 167 Pa. 495.

The appellant was guilty of contributory negligence, in going on the only dangerous part of the pile to get a stone, when the other part of the pile was safe : Cisney v. Sewer Pipe Co., 199 Pa. 519; Collins v. Second Ave. Traction Co., 7 Pa. Superior Ct. 318.

OPINION BY MR. JUSTICE MESTREZAT, MARCH 20, 1905 :

The learned trial judge in granting the nonsuit correctly said that " the difficulty in this case is not in ascertaining the rules of law, because they are well established, but it is the application of the rules." We will repeat, however, as applicable to the facts of this case, what is said in the very recent case of Lillie v. Am. Car and Foundry Co., 209 Pa. 161, that, " The duty to provide a safe place to work and to maintain it in a reasonably safe condition by inspection and repair is a direct, personal and absolute obligation from which nothing but performance can relieve an employer and the person to whom it is delegated becomes a vice principal whose neglect is the neglect of the employer."

The defendants' negligence should have been submitted to the jury. A side track was used in delivering stone and other material for the construction of the wall. The stone was unloaded and piled in the narrow space between the main track of the railroad and the side track. A car standing on the side track was so close to the stone pile that a man could not pass between them. The wall was near the side track and just beyond it was the derrick used in removing the stone from the car after it had been placed on the side track. At the time the plaintiff was injured, the stone pile was from forty to sixty feet long, eight to ten feet wide and about thirteen feet high. The empty car was then standing on the side track and was near

the stone pile. These were the conditions with which the defendants had surrounded the place at which they expected the plaintiff to perform the services for which he was employed. The evidence shows that the height of the stone pile, as well as its proximity to the car, made the place unsafe for the plaintiff to perform his duties. If the pile fell, when he was on it, his only means of escape, according to the testimony, was across the siding. The defendants are presumed to have known these facts and hence it was their duty, if they permitted these conditions to exist, to keep the side track clear of empty cars, or of anything else that might endanger the plaintiff while engaged at his work on the stone pile. If in carrying out their contract to construct the wall of the elevated railway, the defendants erected and used any structure, or located the side track or so used it or directed the stone to be piled so near it as to endanger the safety of their employees while in the discharge of their duties, it was the act of the defendants and they are responsible to an employee, without fault himself, for any injury he may sustain.

But aside from these considerations, Watson had full knowledge of the unsafe condition of the stone pile when he directed the plaintiff to go on it and select stones for the masons. It is true that the plaintiff did not tell him the pile was shaky, and this seems to have been the controlling reason of the court for holding that Watson was ignorant of its condition. The plaintiff's testimony, which for the purposes of this case must be taken to be true, shows what occurred between him and Watson immediately before the pile of stone fell. The plaintiff testified: "I saw the pile of stone was not very safe. Mr. Watson came and says, ' Why ain't you fellows working there ? ' The stonemason talked to Mr. Watson and he says, ' Why, we ain't got no stone.' So Mr. Watson came to me and says, ' What are you doing, Nick ? ' Kind of real sharp, ' Why don't you get stone for the stonemasons, Nick ? ' I says, ' Mr. Watson, that pile of stone looks to me not very safe.' He says, ' The pile of stones is all right, Nick, go get another stone.' I says, ' If you want me to go on that pile of stones I want that car out of my way.' He says, ' Go on, Nick, go and get another stone, never mind the car. The engine will come and take that car out of your way.' I went on the stones. Mr. Watson gave me the order

to go on the pile and walked away." Two of the masons employed on the wall at the time of the accident, and called as witnesses, corroborated the plaintiff as to what occurred at the interview between him and Watson, and testified that the height of the stone pile made it unsafe and that the plaintiff wanted to move the car with a bar and that Watson told him to let it alone, "that the shifter would move it directly." They further testified that if the pile became dangerous, the only thing the plaintiff could do would be to jump toward the siding. Watson, therefore, was fully advised as to the dangerous condition of the stone pile, and observation should have disclosed to him the danger of permitting the car to stand on the track.

Nor do we agree with the learned trial judge that the facts of the case are such as to warrant him in holding the plaintiff guilty of contributory negligence as a matter of law. The learned judge's reasons for declaring the plaintiff guilty of negligence are stated by him as follows : " He (plaintiff) had knowledge, therefore, that the car was in his way in case he had to make his escape. He knew also that the pile was shaky. Yet with that knowledge, which was not conveyed to Mr. Watson at all, with a pile of stone sixty or sixty-five feet long, as he testified, and eight or ten feet wide, he selected the most dangerous part to go and look for the stone, without any orders to do so by Mr. Watson—he went in on that long pile just at the point where the car was standing, and with knowledge that the pile was shaky." The plaintiff's duties required him to go on and over the stone pile until he found a stone of the right dimensions for use of the mason who asked for and was to lay it. Before finding the proper stone, he might be compelled to walk over the entire pile. Nothing short of doing so, would excuse him for not getting a stone for the masons engaged in the construction of the wall. As one of the witnesses testified the plaintiff had to go up on the pile, or on the slant of it, wherever he could get a stone of the dimensions wanted. He, therefore, would not have been justified in confining his labors to any part of the pile in order that he might escape the dangers possibly attendant upon selecting a stone in another part of it. Hence, at the time he was injured, he was where the performance of his duties required him to be. The orders of

Watson did not command him to go to the safe part of the pile and select a stone, as the learned judge seems to think. On the contrary, they directed him to go to any part of the pile, including that in front of and near the car. Watson said: "Go on, Nick, go on and get another stone, never mind the car. The engine will come and take that car out of your way."

We do not think it can be held as a matter of law that the danger to the plaintiff was so obvious and imminent that he should have refused to obey the instructions of Mr. Watson and declined to perform the service. Watson assured the plaintiff the stone pile was all right and "that the shifter would move it (car) directly." From this language he had the right to infer that Watson would act promptly and have the car removed and relieve him from the danger of it being on the side track. The plaintiff had been engaged on the stone pile for some time prior to the accident, and having so far escaped injury, he doubtless believed that by the exercise of extraordinary precaution he might be safe until the car was removed. It was, therefore, for the jury to determine whether under the facts disclosed by the evidence the danger was so evident and imminent that he should have refused to obey the orders of his employer and have declined to continue his work, or whether he was justified in relying upon the judgment of his employer as to the safety of the stone pile and the promise to remove the car.

The judgment of the court below is reversed and a procedendo is awarded.